**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Sensory, Inc.,

                              Plaintiff,

        v.

Google LLC,

                              Defendant.

Case No. 1:24-cv-2788-APM

HON. AMIT P. MEHTA

**<u>DEFENDANT'S MOTION TO DISMISS</u>**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Google LLC respectfully moves this Court to dismiss Plaintiff Sensory, Inc.'s Complaint for failure to state a claim.

Oral argument is requested.

Dated: Dec. 2, 2024

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: *<u>John E. Schmidtlein</u>*
John E. Schmidtlein
(D.C. Bar No. 441261)
Benjamin M. Greenblum
(D.C. Bar No. 979786)
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jschmidtlein@wc.com
bgreenblum@wc.com

*Attorneys for Defendant Google LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Sensory, Inc.,

               Plaintiff,

      v.

Google LLC,

               Defendant.

Case No. 1:24-cv-2788-APM

HON. AMIT P. MEHTA

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

John E. Schmidtlein
(D.C. Bar No. 441261)
Benjamin M. Greenblum
(D.C. Bar No. 979786)
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jschmidtlein@wc.com
bgreenblum@wc.com

*Attorneys for Defendant Google LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

LEGAL STANDARD .................................................................................................... 5

I.     Sensory Lacks Article III Standing. ................................................................... 6

       A.     Sensory Fails to Plead a Concrete Injury in Fact. ................................... 6

       B.     Sensory Fails to Plead Any Causal Connection Between Google's Conduct and
              Sensory's Alleged Injury. ....................................................................... 8

II.    Because Sensory Does Not Allege It Is a Participant in the Markets for General Search
       Services, Search Advertising, and General Search Text Advertising, It Lacks Antitrust
       Standing to Bring Count One. .......................................................................... 10

III.   Counts Two Fails to Plead the Requisite Elements of a Tying Claim. ............ 12

       A.     Count Two Fails to Define the Tying or Tied Markets. ......................... 13

       B.     Count Two Fails to Allege Coercion. .................................................... 16

       C.     Count Two Fails to Allege That a Substantial Volume of Commerce Is
              Foreclosed. ........................................................................................... 17

IV.    Count Two Also Fails Because Sensory Does Not Have Antitrust Standing to Pursue
       Claims for Damages in Product Markets for Voice Assistants and Wakewords. ............. 17

V.     Count Three Should Be Dismissed for the Same Reasons as Counts One and Two. ........ 18

CONCLUSION .............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**FEDERAL CASES**

*Air Excursions LLC v. Yellen*, 66 F.4th 272 (D.C. Cir. 2023) .................................................. 8, 9

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051 (9th Cir. 1999) .............................. 10

*Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190 (N.D. Cal. 2008)......................................... 13

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) ........................................................................ 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 5, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 6, 8, 10, 13

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ........................................... 10

*CCBN.Com, Inc. v. Thomson Fin., Inc.*, 270 F. Supp. 2d 146 (D. Mass. 2003)........................... 17

*Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126 (E.D.N.Y. 2010) .................................................. 14

*Coronavirus Rep. v. Apple, Inc.*, No. 21-cv-05567-EMC, 2021 WL 5936910 ...........................
    (N.D. Cal. Nov. 30, 2021)........................................................................... 13, 14, 15, 16

*Fotobom Media, Inc. v. Google LLC*, 719 F. Supp. 3d 33 (D.D.C. 2024) ......................... *passim*

*Genetic Sys. Corp. v. Abbott Laboratories*, 691 F. Supp. 407 (D.D.C. 1988)..................... 12, 18

*Golden v. Intel Corp.*, 2023 WL 3262948 (Fed. Cir. May 5, 2023)……………………………7, 8

*Golden v. Intel Corp.*, 642 F. Supp. 3d 1066 (N.D. Cal. 2022)........................................... 6, 10

*Hancock v. Urb. Outfitters, Inc.*, 830 F.3d 511 (D.C. Cir. 2016) ................................................ 5

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129
    (N.D. Cal. 2008)............................................................................................................. 12

*It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676 (4th Cir. 2016) ....................................... 16

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984) ................................................. 13

*Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976 (D.C. Cir. 2017) ............................ 10

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).............................................................. 6, 8, 10

*Menoken v. Miles*, 270 F. Supp. 3d 200 (D.D.C. 2017)............................................................. 6

*Queen City Pizza, Inc. v. Domino's Pizza Inc.*, 124 F.3d 430 (3d Cir. 1997) ........................ 6, 13

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963 (9th Cir. 2008) ............................ 14

*Shareef v. United States*, 2021 WL 199555 (D.D.C. Jan. 20, 2021) ................................................ 9

*Serv. Emps. Int'l Union Health & Welfare Fund v. Philip Morris, Inc.*, 83 F. Supp. 2d 70
(D.D.C. 1999) ........................................................................................................................ 18

*\*Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160 (N.D. Cal. 2013) ........................................ 14, 16, 17

*\*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...................................................................... 5, 6, 8

*United States v. Google LLC*, 687 F. Supp. 3d 48 (D.D.C. 2023) ................................................ 11

*United States v. Google LLC*, Nos. 20-cv-3010 (APM), 20-cv-3715 (APM), 2023 WL 6294171
(D.D.C. Sept. 8, 2023) .......................................................................................................... 11

*\*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) .................................... 13, 16, 17

## STATUTES & OTHER AUTHORITIES

15 U.S.C. § 1 ............................................................................................................................ *passim*

15 U.S.C. § 2 ............................................................................................................................ *passim*

District of Columbia Code § 28–4502 ...................................................................................... 1, 18

District of Columbia Code § 28–4503 ...................................................................................... 1, 18

District of Columbia Code § 28–4508 ...................................................................................... 18

District of Columbia Code § 28-4515 ...................................................................................... 19

## INTRODUCTION

Sensory allegedly develops "voice recognition technology" for electronic devices.  Compl. ¶¶ 42, 50, 59–60.  Apart from (threadbare) allegations that Sensory was "crippled" by Google's alleged conduct, *id.* ¶ 62, its Complaint does nothing to explain the nature of Sensory's alleged injury, how Google's conduct caused Sensory's alleged injury, or how any alleged injury suffered by Sensory occurred in the same market purportedly impacted by Google's conduct.  Sensory's Complaint accordingly should be dismissed.

Sensory brings two Sherman Act claims: (1) for monopoly maintenance in markets for general search services, search advertising, and general search text advertising, in violation of Sherman Act Section 2; and (2) for tying of "Android OS, Google Cloud and other Google products and services" to Google Assistant and to the alleged associated exclusion or limitation of certain voice-recognition technologies, in violation of Sherman Act Section 1.  *Id.* ¶¶ 38, 66–68, 131.  Sensory also alleges the violation of two District of Columbia Code antitrust provisions that mirror the federal antitrust statutes: Section 28–4503's prohibition of monopoly maintenance and Section 28–4502's prohibition of conspiracies in restraint of trade.  *Id.* ¶¶ 136–38.  Sensory's claims fail for at least five reasons.

*First*, all claims should be dismissed because the Complaint fails to establish that Sensory possesses Article III standing.  Specifically, Sensory fails to plead two core elements of Article III standing: that it suffered a concrete injury and that Google's conduct caused any such injury.  Sensory offers no well-pleaded allegations about the nature or character of its injury, much less how Google's alleged conduct supposedly caused it.

*Second*, Count One should be dismissed for the additional reason that Sensory fails to plead sufficient facts to establish antitrust standing.  The only markets alleged in the Complaint are markets for general search services, search advertising, and general search text advertising, *see id.*

¶¶ 8–9, 67–68, 70, yet nowhere does Sensory allege (nor could it) *that it participates in these markets*.  Sensory pleads only limited details about the products it sells or licenses, or how its business was allegedly injured—but from what little it has alleged, the pleadings confirm that Sensory's voice-recognition products do not compete in the alleged markets for general search services or search advertising.  This precludes antitrust standing as to Count One.

*Third*, in Count Two, Sensory's tying claim, the Complaint fails to plead the requisite elements of a tying offense under Sherman Act Section 1.  Specifically, Sensory fails to plead the tying and tied product markets with any specificity, fails to plausibly plead coercion, and fails to allege the foreclosure of a substantial volume of commerce in the (undefined) tied market.  *See id.* ¶¶ 131–34.

*Fourth*, Count Two fails even if Sensory had adequately pled the elements of a tying claim, because (as with Count One) Sensory does not plead sufficient facts to establish that it suffered an injury in any market supposedly impacted by the alleged tying arrangement.  *See id.* ¶¶ 131–34.

*Fifth*, Sensory's District of Columbia law claims in Count Three are premised on the same conduct at issue in Counts One and Two and should be dismissed for the same reasons.  *See id.* ¶¶ 135–38.

For these reasons, Sensory's Complaint should be dismissed.

## FACTUAL BACKGROUND

Plaintiff alleges it is a "voice recognition technology" company that is an "innovator" in "wakewords," which are "spoken words that trigger or 'wake up' a device."  Compl. ¶¶ 37, 42.  Sensory also alleges it has developed other "voice recognition technolog[ies]," including "multi-wakeword technology," "command and control, sound ID, [and] custom voice assistants."  *Id.* ¶¶ 37, 42, 56, 62, 106.  Apart from listing the names of these technologies, however, Sensory pleads nothing to describe its specific product offering (it does not plead, for instance, whether it

markets "wakeword technology" as a mobile application or browser extension, *see id.* ¶¶ 55–56),
nor does Sensory identify to whom it has marketed any particular product or how it earns revenue
from these undefined products.

Sensory does allege that certain of its "technolog[ies]" have been "licensed and used by
major companies" and have been "incorporated into and shipped in over one billion products." *Id.*
¶¶ 58–60.   Sensory does not, however, identify any partners that licensed the particular
technologies that it says are at issue with regard to Google's conduct in this case.

**Sensory's Theory of Liability.**   Sensory alleges that in the course of Google's purported
monopolization of alleged markets for general search engines and search advertising, Google
"crippled" Sensory's business by denying it the ability to offer its voice-recognition products to
device manufacturers. *Id.* ¶ 62.  In particular, Sensory claims that Google's licensing agreements
with device manufacturers—including manufacturers of Android mobile phones, smart speakers,
televisions and automobiles—require the installation of Google Assistant as the exclusive default
assistant product, which has in turn "den[ied] Sensory [a] foothold" in "offering wakewords" and
other voice-recognition "solutions" for these devices.  *Id.* ¶¶ 10, 62, 102–103, 111, 117, 123.
Sensory does not plead that it offers any voice assistant product that competes with Google
Assistant; to the extent that Sensory suggests it licensed technology to partners who, in turn,
offered competing voice assistants, Sensory does not plead what technology or partners were
allegedly stifled by Google in that respect.

**Sensory Fails to Define Its Alleged Injury.**   Although Sensory vaguely alleges it was
precluded from "offering" or "providing" its "products" on devices running the Android operating
system, *id.* ¶¶ 55–57, 62, 100, 120, Sensory pleads no facts to identify specifically the products it
was unable to market, or how *Google's conduct* precluded Sensory from offering those products.

Sensory instead alleges, for example, it was the first technology company to "solve certain specific problems" with wakewords and "concurrency" (the ability for a device to operate with multiple wakewords such as "Hey Google" or "Alexa"), and that Google's agreements with device manufacturers precluded Sensory from "offering wakewords" on Android devices. *Id.* ¶¶ 55–57, 62. However, Sensory pleads no facts to explain what it means to "offer[]" wakewords to device manufacturers. *Id.* ¶ 62. Sensory does not plead, for instance, that it would have licensed a wakeword codebase product, sold software solutions for the "specific problems" with wakewords, or something else, were it not for Google's alleged conduct, or how Sensory earned (or would have earned) revenue from these (undefined) products. *Id.* ¶ 55. Nor does Sensory plead any facts specifically describing how Google's alleged conduct precluded Sensory from offering these products, given that Google's agreements have no alleged bearing upon Sensory's ability to partner with firms that offer voice assistants that compete with Google Assistant. Indeed, Sensory does not plead any facts suggesting it has "offer[ed]" wakeword technology in support of any particular voice assistant, let alone any voice assistant that competes with Google Assistant. *Id.* ¶ 62.

Sensory pleads that Google's agreements with device manufacturers "preclude[] the use of custom voice assistants" that "rival" Google Assistant. *Id.* ¶¶ 107, 123. But Sensory does not allege that it offers a custom voice assistant competing with Google Assistant. Instead, it provides only vague and shifting descriptions of what kind of technologies it offers for incorporation into a "custom voice assistant." The Complaint states, for example, that Sensory "develops and licenses *technologies* for . . . custom voice assistants," *id.* ¶ 50, and later alleges that Sensory offers voice assistant "*solutions*" and "*services*," *id.* ¶¶ 62, 120. In addition to failing to define its "custom voice assistant" technology, Sensory also fails to plead any facts suggesting that Google's agreements interfered with Sensory's licensing of any such technology to any particular

manufacturer of products that compete with Google Assistant.  Nor does Sensory plead any facts to explain how it even profited from licensing this technology.

**Wakewords and Voice Assistants Are Not General Search Engines.**  Sensory does not allege that it offers (or has ever conceived of offering) a search engine product, or that its products provide any search capability.  Instead, Sensory alleges that wakewords and voice assistants can be used as "gateway[s]" to reach search access points such as browsers.  *Id.* ¶ 73.  While Sensory suggests that the proliferation of rival voice assistants "*could*" lead users to "use [] different underlying non-Google search engines," *id.* ¶ 123, Sensory does not allege that its technology has anything to do with that, much less that any of its technologies compete in some fashion in a market for general search.

## LEGAL STANDARD

In order to survive dismissal at the pleading phase, "the plaintiff must clearly. . . allege facts demonstrating" the "irreducible constitutional minimum" of Article III standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (quotation marks omitted).  "Until that jurisdictional threshold is crossed, the court cannot proceed at all in any cause." *Hancock v. Urb. Outfitters, Inc.*, 830 F.3d 511, 513 (D.C. Cir. 2016) (quotation marks omitted).

Furthermore, unless a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," it cannot survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  A claim is facially plausible only where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  The court must "assume the [] veracity" of a complaint's "well-pleaded factual allegations"—yet, conclusory allegations "are not entitled to the assumption of truth."  *Id.* at 679.  While "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery," it is "quite another to forget that

proceeding to antitrust discovery can be expensive." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). For this reason, antitrust plaintiffs must plausibly plead each element of an antitrust claim in order to survive the Rule 12(b)(6) stage. *See, e.g.*, *Fotobom Media, Inc. v. Google LLC*, 719 F. Supp. 3d 33, 43 (D.D.C. 2024) ("Every antitrust plaintiff must . . . plausibly plead antitrust injury[.]" (cleaned up)); *Queen City Pizza, Inc. v. Domino's Pizza Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (noting that where an antitrust plaintiff fails to plausibly plead the bounds of its proposed market, "the relevant market is legally insufficient" and dismissal is warranted).

## ARGUMENT

## I.    Sensory Lacks Article III Standing.

In Counts One and Two, and in its attendant D.C. law claims, Sensory fails to articulate its injury with even a modicum of detail and therefore falls short of Article III's "irreducible constitutional minimum." *Spokeo*, 578 U.S. at 338 (quotation marks omitted); *see also Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). The Complaint's vague allegations fail to satisfy two core elements of Article III's "case or controversy" requirement: (1) that Sensory suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; and (2) that Sensory's alleged injury is "fairly traceable to" Google's conduct. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

### A.    Sensory Fails to Plead a Concrete Injury in Fact.

Sensory broadly alleges that it was "crippled" by Google's conduct, and that this conduct supposedly prevented Sensory from gaining a "foothold" in selling its (unspecified) voice-recognition technologies to device manufacturers. *See* Compl. ¶ 62. These conclusory allegations are insufficient to plead injury in fact; a plaintiff must specifically plead *how* it was injured. *See Menoken v. Miles*, 270 F. Supp. 3d 200, 209–10 (D.D.C. 2017); *see, e.g.*, *Golden v. Intel Corp.*, 642 F. Supp. 3d 1066, 1070, 1072–73 (N.D. Cal. 2022) (dismissing an antitrust claim for lack of

Article III standing where plaintiff failed to "identif[y] what [the defendant's allegedly injurious] actions are" or "assert that he has been harmed by them or explain to what extent"), *aff'd*, 2023-1257, 2023 WL 3262948, at *2 (Fed. Cir. May 5, 2023) (noting that an antitrust plaintiff who provided only "vague, conclusory allegations" of unspecified harms did not adequately allege Article III injury).

Sensory's vague allegations fall well short of pleading a concrete injury in fact. *First,* Sensory alleges that as a result of Google's distribution agreements with Android device manufacturers, it was "prevented [ ] from offering wakewords" or "concurrent wakewords" on various consumer electronics, including Android phones and various smart devices. Compl. ¶¶ 62, 90. As an initial matter, Sensory's Complaint does not plead what it means to be precluded from "offering wakewords" or how Sensory suffered injury as a result. *Id.* ¶ 62. Sensory does not allege, for instance, whether it was prevented from: selling hardware for recognizing wakewords, licensing a wakeword application, providing programming services to solve "specific problems" with wakeword technology, or something else entirely. *See id.* ¶ 55. More fundamentally, Sensory does not plead *to whom* it was precluded from offering these products, or *how*: Sensory does not plead that any of Google's distribution agreements prevented Sensory from securing any specific agreement to sell or license any wakeword product to any specific counterparty. This falls well short of plausibly alleging a concrete, actual injury. *See Golden*, 2023 WL 3262948, at *2.

*Second,* Sensory alleges it was denied a "foothold" as to other unspecified voice-recognition software. Compl. ¶ 62. This allegation is inscrutable. Sensory does nothing to explain what it means to have a "foothold" in voice-recognition products, much less explain the nature of these other products that allegedly would have incorporated or used Sensory technologies.

Sensory fails to plead even the most basic details of the type or extent of its alleged injury.  *See Golden*, 2023 WL 3262948, at *2.

*Third,* Sensory pleads that Google's alleged requirement that its Android device partners set Google Assistant as the default precluded Sensory from offering "custom voice assistant" technology, solutions, and services.  Compl. ¶¶ 42, 50, 62, 107, 120, 123.  Again, Sensory does not explain what "technologies," "solutions," or "services" it offered, or which voice assistants its products allegedly supported, inasmuch as the Complaint concedes by omission that Sensory does not offer its own voice assistant.  Nor does Sensory explain how it earned revenue from marketing these products, or even how Google's agreements allegedly interfered with any such revenue streams (actual or expected).

Sensory's indeterminate assertions about the nature of its alleged injuries fail to sufficiently plead injury in fact.  *See Twombly*, 550 U.S. at 557; *Lujan*, 504 U.S. at 560–61; *Spokeo*, 578 U.S. at 338.

### B.    Sensory Fails to Plead Any Causal Connection Between Google's Conduct and Sensory's Alleged Injury.

Beyond failing to plead a concrete injury, Sensory fails to meet a separate requirement of Article III standing: pleading a causal connection between its ill-defined injury and Google's alleged misconduct with a level of detail beyond "naked assertion[s]."  *Air Excursions LLC v. Yellen*, 66 F.4th 272, 279 (D.C. Cir. 2023) (quoting *Twombly*, 550 U.S. at 557).

Sensory pleads it was injured by Google allegedly requiring that manufacturers set Google Assistant and Google's wakewords as defaults on Android devices.  Compl. ¶¶ 62, 111, 117, 122.  Yet Sensory does not allege how manufacturers' adoption of Google Assistant and Google's wakewords affected Sensory's ability to sell, license, or earn revenues from the licensing of its technology.  In other words, Sensory does not plead how (if at all) any alleged harm was fairly

traceable to *Google's alleged conduct*.  Did Sensory license or sell voice recognition products to a firm that was somehow allegedly precluded from using Sensory's technologies due to an agreement with Google?  Did Sensory's revenues from these (unidentified) licensing agreements decrease as a result of Google's agreements to license the Google Assistant to Android device manufacturers?  How could *Google's agreements* impact Sensory's ability to license its technologies to rival voice assistants such as Apple's Siri or Amazon's Alexa, which are not alleged to be subject to these agreements?  The Complaint does not provide answers to any of these questions.

The D.C. Circuit confronted a similar scenario in *Air Excursions LLC v. Yellen* and held that the plaintiff, an air carrier, failed to adequately plead that the alleged misconduct—the illegal distribution of federal funds to the carrier's competitor—caused the carrier's complained-of injury. 66 F.4th at 278–79.  Allegations that the competitor's improper receipt of federal funds allowed it to price below market rates were insufficient, because the complaint pleaded "no factual matter regarding the timing of [the competitor's] pricing decisions" or how the competitor's prices shifted before and after it received federal funding.  *Id.* at 278–79.  Likewise, here, Sensory's vague allegations of being denied a "foothold" in voice-recognition technologies does not connect any alleged injury to any alleged conduct by Google.  *See id.* at 279 (dismissing complaint for failure to provide any "factual enhancement" substantiating a causation theory) (citations omitted); *see also Shareef v. United States*, 2021 WL 199555, at *2 (D.D.C. Jan. 20, 2021) (holding that a plaintiff's allegation that unnamed third parties "would have licensed" his patents but for the defendant's conduct was too speculative to establish standing).

Sensory's failure to plead a causal connection between the challenged conduct and its injury, as required under Article III, requires dismissal.  *See Twombly*, 550 U.S. at 557; *Lujan*, 504 U.S. at 560–61.

## II.  Because Sensory Does Not Allege It Is a Participant in the Markets for General Search Services, Search Advertising, and General Search Text Advertising, It Lacks Antitrust Standing to Bring Count One.

Even had Sensory adequately pled that it suffered an injury in fact caused by Google (it has not), Sensory must plead facts sufficient to establish antitrust standing, an additional requirement beyond Article III's threshold standing inquiry.  "While Article III standing is a familiar concept common to all cases, antitrust standing is claim-specific. It asks whether the plaintiff is a proper party to bring a private antitrust action."  *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 981 (D.C. Cir. 2017) (internal quotation marks omitted); *see also Golden*, 642 F. Supp. 3d at 1072–73 (dismissing antitrust claim not simply for failure to plead Article III standing but also for failure to plead antitrust standing).  Antitrust standing requires private plaintiffs like Sensory to plead injuries of the type that "the antitrust laws were intended to prevent."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

Notably, "[a]ntitrust injury does not arise until a private party is adversely affected by an *anticompetitive* aspect of the defendant's conduct; it is not sufficient that the plaintiff's injury be causally related to an antitrust violation."  *Fotobom Media*, 719 F. Supp. 3d at 43 (cleaned up) (alteration in original).  Rather, in order to survive a motion to dismiss, an antitrust plaintiff must plausibly plead that it "is a participant in the relevant market and suffered its injury in the market where competition is being restrained."  *Id.* at 44 (citing *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999)).  Sensory does not allege that it is a participant in the markets allegedly impacted by the conduct identified in Count One.

10

As a firm that provides "voice recognition" and "wakeword" technology that allegedly is incorporated into voice assistants, Compl. ¶ 42, Sensory does not plead that it suffered injury in the alleged markets for general search, search advertising, and text advertising. *Id.* ¶¶ 38, 67–68. Sensory offers no articulation of how a company that offers "wakeword" and "voice recognition" component technology competes in general search or in search advertising, nor could it, because Sensory does not offer a general search engine product.

This Court was confronted with a similar scenario in *Fotobom Media*, where a distributor of a keyboard application claimed it suffered antitrust injury in the market for "general search services." 719 F. Supp. 3d at 44. While the plaintiff's keyboard application could be used to *access* search engines, the Court concluded that the "market for general search" includes only "meaningful general search providers," such as Google, Bing, and Yahoo!. *Id.* at 44–45 (citation omitted). Here, as in *Fotobom Media*, Sensory does *not* allege that it operates a general search engine. *Id.* at 44.[1] And here, as in *Fotobom Media*, Sensory alleges that the relevant technologies—namely, wakewords and voice assistants—at most serve as "gateway[s]" to search engines. Compl. ¶¶ 73, 105; *Fotobom Media*, 719 F. Supp. 3d at 45 (referring to Fotobom's product as a "bridge to Google" (internal quotation marks omitted)). Indeed, the link between Sensory and general search is even more attenuated than in *Fotobom Media*. Whereas the plaintiff in *Fotobom Media* nominally alleged that its product offered "*some* search results," 719 F. Supp. 3d at 44, Sensory makes no such allegation with respect to any of its products. *Id.* At most,

---

[1] Nor does Sensory account for the Court's findings in *United States v. Google LLC*, despite repeatedly citing evidence adduced in that case. Compl. ¶¶ 2, 5–15, 77, 102. Sensory fails to acknowledge that the Court granted summary judgment on claims related to Google Assistant. *United States v. Google LLC*, 687 F. Supp. 3d 48, 86 (D.D.C. 2023) (citation omitted). Indeed, the Government's "own expert" conceded that "virtual assistants do not fall within the market for general search." *United States v. Google LLC*, Nos. 20-cv-3010 (APM), 20-cv-3715 (APM), 2023 WL 6294171, at *1 (D.D.C. Sept. 8, 2023).

Sensory alleges that *wakewords* and *voice assistants* provide a "gateway to search," but even there Sensory does not allege that it provides these products, but instead only that it licenses "technologies" or "solutions" that may *support* these products.  Compl. ¶¶ 55, 58, 62.  In other words, Sensory provides technologies and solutions for other technologies, which in turn allegedly serve as a gateway for users to access Google search.  This does not plead Sensory's participation in any search engine market implicated by Count One and so does not plead antitrust injury.  *See also Genetic Sys. Corp. v. Abbott Laboratories*, 691 F. Supp. 407, 420 (D.D.C. 1988) (dismissing antitrust claims of a supplier of blood-screening test equipment for lack of antitrust standing as a nonparticipant in the market for blood transfusions); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1141 (N.D. Cal. 2008) ("Parties whose injuries . . . are experienced in another market do not suffer antitrust injury." (internal quotation marks omitted)).

Sensory's suggestion that it suffered cognizable injury as a participant in markets for search advertising and general search text advertising, Compl. ¶ 38, is likewise insufficient on its face.  For the same reasons that Sensory does not plead that it participates in the market for general search, it similarly does not participate in the market for search *advertising*, and so lacks antitrust standing.  *See Genetic Sys. Corp.*, 691 F. Supp. at 420; *Fotobom Media*, 719 F. Supp. 3d at 44, 47.

## III.    Counts Two Fails to Plead the Requisite Elements of a Tying Claim.

Sensory dedicates a single paragraph to describing the conduct purportedly constituting unlawful tying.  The Complaint asserts that "Google's contracts and agreements with others, including hardware manufacturers, tie the availability of Android OS, the Google Cloud, revenue sharing to the use of the Google Assistant, the exclusion of or limitations on customer voice assistants, the exclusion of concurrent wakewords, and other limitations."  Compl. ¶ 131.  This "naked" (and incomprehensible) assertion of tying, *Twombly*, 550 U.S. at 557, is insufficient to

plead any of the four elements of a tying claim, namely, that: (1) the tying and tied goods exist in two distinct product markets; (2) the defendant has market power in the tying product market; (3) the defendant "affords consumers no choice but to purchase the tied product from it"; and (4) the tying arrangement "forecloses a substantial volume of commerce," *United States v. Microsoft Corp.*, 253 F.3d 34, 85 (D.C. Cir. 2001).  Count Two should be dismissed.

A.    **Count Two Fails to Define the Tying or Tied Markets.**

Defining the relevant product market is central to any antitrust claim, because "[w]ithout a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition.'"  *Coronavirus Rep. v. Apple, Inc.*, No. 21-cv-05567-EMC, 2021 WL 5936910, at *6, *15 (N.D. Cal. Nov. 30, 2021) (citation omitted).  Courts therefore require plaintiffs asserting a tying claim to specifically define the tying and tied product markets.  *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 18 (1984) ("[A]ny inquiry into the validity of a tying arrangement must focus on the [relevant antitrust] market or markets in which the two products are sold.").  A failure to define either market requires dismissal.  *See, e.g., Queen City Pizza, Inc.*, 124 F.3d at 436, 441; *Coronavirus Rep.*, 2021 WL 5936910, at *6, *15; *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1196, 1203 (N.D. Cal. 2008).

In defining tying and tied markets, a plaintiff must provide more than labels.  *Coronavirus Rep.*, 2021 WL 5936910, at *6 (noting that a plaintiff cannot "arbitrarily choose the product market relevant to its claims").  Rather, a plaintiff must plead facts "sufficient to justify" a designated market.  *Id.* at *10–11 (citation omitted).  Specifically, "plaintiff[s] must 'justify any proposed market by defining it with reference to […] interchangeability and cross-elasticity of demand.'"  *Id.* at *11 (citation omitted).  And where a plaintiff fails to adequately define the relevant product markets, the plaintiff cannot plead two additional key elements of a tying claim: that the defendant has market power in the tying product market and that consumers are deprived of choice in the

tied product market.  *See Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1178 (N.D. Cal. 2013) (holding that plaintiffs "have not defined the relevant markets sufficiently to make [] a showing" of "negative impact on competition in the tied markets"); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 144 & n.15 (E.D.N.Y. 2010) ("[P]laintiff has failed to define the relevant market and has failed to allege in anything but a conclusory manner that [defendant] exerts some sort of control over that alleged market."); *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 972 (9th Cir. 2008) ("If [defendant] lacks market power in the [relevant] market, there can be no cognizable tying claim," because defendant thus has "no power to force, exploit, or coerce a [consumer] to purchase a tied product.").

The only relevant markets Sensory even attempts to define[2] are for "General Search Services, Search Advertising, and General Search Text Advertising."  *See* Compl. ¶¶ 67–71. Sensory does not provide any allegations to define the markets associated with the purportedly tying products, namely "Android OS, the Google Cloud, [and] revenue sharing," or the purportedly tied products, namely "Google Assistant, the exclusion of or limitations on customer voice assistants, [and] the exclusion of concurrent wakewords."  *Id.* ¶ 131.  Sensory fails to plead *anything* beyond names of these products in order to define the relevant markets in which they are situated.  *See Coronavirus Rep.*, 2021 WL 5936910, at *7.

Sensory's pleading failures bear significant similarities to those in *Coronavirus Reporter*, wherein mobile app developers alleged, among other things, that Apple had unlawfully tied its "App Store" and other offerings to the "iOS device market."  2021 WL 5936910, at *4.  The court observed that plaintiffs had not defined either of those markets, and had in fact named at least

---

[2] Google assumes the truth of the allegations pleading these three markets solely for purposes of this motion to dismiss, consistent with Rule 12(b)(6).

"fifteen different relevant markets to its antitrust claims against Apple" without offering any description of "what is included and what is not." *Id.* at *3, *8. Because plaintiffs had merely "mention[ed]" these markets "but d[id] not define [them]," the court held that the complaint "d[id] not provide sufficient clarity . . . to assess the threshold question of whether there is a relevant market for [the] antitrust claims." *Id.* at *7–8.

Sensory's failure to identify the relevant tying or tied markets is the same: Count Two does not even *attempt* to define the applicable markets. *See* Compl. ¶¶ 131–32. With respect to the tying products, Sensory pleads no facts to explain what market "Android OS, the Google Cloud, [and] revenue sharing" compete in. *Id.* ¶ 131.[3] Indeed, "revenue sharing" is not a good or service at all. And while Android OS and Google Cloud are both products offered by Google, Sensory does not identify the market beyond naming products. *See Coronavirus Rep.*, 2021 WL 5936910, at *6 (arbitrary labels insufficient to define a market). Having failed to plead the relevant markets, Sensory also fails to plead that Google has market power in any market where these products compete.

Sensory similarly fails to define the tied product markets for Google Assistant. Compl. ¶ 131. While Sensory suggests in passing that there exists a market for "voice assistants," *id.* ¶ 132, Sensory does nothing to define this alleged market. It does not identify, for instance, who purchases voice assistants or which other third parties develop them. It certainly does not provide any of the detail necessary to plead what products are reasonable substitutes with voice assistants or whether Google has market power in any such market. The information provided about this

---

[3] In support of Count Two, Sensory also alleges in passing that Google "acquired, maintained, and extended its monopoly power in internet search, text search, [and] voice search." Compl. ¶ 132. Sensory does not define these markets, either; and it does not allege that either the tying or tied products compete in these markets. *See Coronavirus Rep.*, 2021 WL 5936910, at *6–7.

alleged market is simply too "unclear" to constitute a cognizable market definition.  *See Coronavirus Rep.*, 2021 WL 5936910, at *8 (citation omitted).  Having failed to define any tied product markets, Sensory cannot plead that, absent an alleged tying scheme, consumers would switch to Sensory's (unspecified) products.  *Sidibe*, 4 F. Supp. 3d at 1176–78.

Sensory's failure to define either the tying or tied product markets warrants dismissal of Count Two.

### B.    Count Two Fails to Allege Coercion.

Sensory does not plausibly allege any arrangement that "affords consumers no choice but to purchase the tied product."  *Microsoft Corp.*, 253 F.3d 34 at 85; *It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 684 (4th Cir. 2016) ("coercion of the consumer" in the tied market is central to a tying claim (emphasis omitted)).  Sensory pleads only that Google's alleged agreements "tie[d] the availability" of Android OS and Google Cloud to "the use of the Google Assistant, the exclusion of or limitation on customer voice assistants, the exclusion of concurrent wakewords, and other limitations," Compl. ¶ 131, and that this "harmed consumers and competition," *id.* ¶ 133.

This fails to plead coercion for two reasons.  First, Sensory fails to define the tied product market—a necessary predicate to pleading that a tying arrangement coerced consumers *in that market*.  *See supra* Section III.A.  Second, Sensory fails to identify the parties to the alleged agreements or what the allegedly coercive tying arrangements *actually are*.  Instead, it alleges only that products were "tie[d]" through various unspecified "contracts and agreements with others." Compl. ¶ 131.  But Sensory does not allege how these contracts tied those products together, which manufacturers were parties to such contracts, nor how those contracts excluded "customer voice assistants" or "concurrent wakewords."  *See id.*  It does not plead that any particular manufacturer or end user was forced to use any particular voice assistant or wakeword technology.  It also does

not plead that any particular manufacturer or end user "would have purchased a product elsewhere" in the absence of this alleged tying arrangement.  *See Fotobom Media*, 719 F. Supp. 3d at 50 (citation omitted).  Having provided only "naked assertions" regarding the nature of this alleged coercion, *Iqbal*, 556 U.S. at 678 (alteration and citation omitted), Sensory cannot state a claim for illegal tying.  *See Fotobom Media*, 719 F. Supp. 3d at 50; *Microsoft Corp.*, 253 F.3d 34 at 85.

### C. Count Two Fails to Allege That a Substantial Volume of Commerce Is Foreclosed.

Finally, Sensory does not plead that the alleged tying arrangements foreclosed a substantial volume of commerce in any tied product market.  *See Microsoft Corp.*, 253 F.3d at 85.  Sensory does not plead anything beyond the conclusory assertion that the alleged tying arrangement "ha[s] harmed consumers and competition" and "directly and proximately caused injury" to Sensory, Compl. ¶¶ 131, 133–34, which is plainly insufficient, *Iqbal*, 556 U.S. at 679.  Beyond obliquely noting that "consumers and competition" have been harmed, Compl. ¶¶ 131, 133, Sensory pleads no facts about the amount of competition foreclosed in the (undefined) tied product markets.  *See Sidibe*, 4 F. Supp. 3d at 1178 (dismissing tying claim where allegations about impact on tied market were "inapposite or entirely conclusory"); *CCBN.Com, Inc. v. Thomson Fin., Inc.*, 270 F. Supp. 2d 146, 156 (D. Mass. 2003) (merely alleging that "tying has had and will continue to have anticompetitive effects in the [tied product] market" insufficient to state a claim).  Sensory's failure to plead the foreclosure of a substantial volume of commerce is an independent ground for dismissal.  *See Iqbal*, 556 U.S. at 679.

### IV. Count Two Also Fails Because Sensory Does Not Have Antitrust Standing to Pursue Claims for Damages in Product Markets for Voice Assistants and Wakewords.

Count Two fails for the additional reason that Sensory does not plead sufficient facts to establish that it suffered antitrust injury in the allegedly tied product markets for "customer voice assistants" and "concurrent wakewords."  Compl. ¶ 131.  As explained, *supra* Section II, an

antitrust plaintiff must plausibly plead that it suffered injury as "a participant in . . . the market where competition is being restrained." *Fotobom Media*, 719 F. Supp. 3d at 44 (internal quotation marks omitted).

Even if Count Two had pled adequately defined markets, it would still fail because Sensory does not sufficiently plead that it is a *participant* in the markets for "voice assistants" or "concurrent wakewords." Sensory does not allege that it offers a standalone voice assistant, like Google Assistant, Apple's Siri, or Samsung's Bixby. Compl. ¶ 105. Instead, Sensory alleges that it provides "technologies," "solutions," and "services" for the development of custom voice assistants by unnamed device manufacturers. *Id.* ¶¶ 42, 50, 62, 120. Similarly, Sensory does not allege that it competes in the market for "wakewords" or "concurrent wakewords" (nor does it even define what it means to offer such products). Rather, Sensory alleges that it provides unspecified voice assistant developers with "technological solutions" meant to "solve certain specific problems in wakewords and their deployment with voice assistants." *Id.* ¶ 55. Because Sensory does not allege it is a participant in the markets for voice assistants or wakewords, but rather that it merely offers certain services for use in these (undefined) product markets, it lacks antitrust standing to bring its tying claim. *See Genetic Sys.*, 691 F. Supp. at 419–20.

## V.    Count Three Should Be Dismissed For the Same Reasons as Counts One and Two.

Count Three alleges violations of District of Columbia Code Sections 28-4502, 28-4503, and 28–4508. Compl. ¶¶ 136, 139. Not only are these claims lacking in Article III standing, *supra* Section I, but they also fail for the same reasons identified *supra* in Sections II–IV. Courts have interpreted these provisions of the District of Columbia Code generally to mirror Sherman Act Sections 1 and 2. *See, e.g.*, *Serv. Emps. Int'l Union Health & Welfare Fund v. Philip Morris, Inc.*, 83 F. Supp. 2d 70, 90 n. 33 (D.D.C. 1999) (noting that because the antitrust statutes in the D.C. Code explicitly aim for uniformity with their federal equivalents, the analysis is the same); *see*

*also* District of Columbia Code § 28-4515 ("It is the intent of the Council of the District of Columbia that in construing this chapter, a court of competent jurisdiction may use as a guide interpretations given by federal courts to comparable antitrust statutes.").  Count Three therefore should be dismissed.  *See supra* Sections I–IV.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

Dated: Dec. 2, 2024

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: *John E. Schmidtlein*
John E. Schmidtlein
(D.C. Bar No. 441261)
Benjamin M. Greenblum
(D.C. Bar No. 979786)
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jschmidtlein@wc.com
bgreenblum@wc.com

*Attorneys for Defendant Google LLC*